Daniel Cooper (Bar No. 153576)
Samantha Williams (Bar No. 251344)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: daniel@lawyersforcleanwater.com

Christopher Sproul (Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com

Jason Flanders (Bar No. 238007)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: jason@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF MILLBRAE, a California municipal corporation,<br><br>　　　　　Defendant. | Civil Case No.:  CV 09-05675 SBA<br><br>**CONSENT DECREE** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and Defendant City of Millbrae ("Defendant" or "Millbrae"). The entities entering into this Consent Decree are each referred to herein as "Settling Party" and collectively as "Settling Parties."

**WHEREAS**, Baykeeper is a non-profit public benefit corporation dedicated to, among other things, the protection and enhancement of the water quality of the San Francisco Bay;

**WHEREAS**, Millbrae is a municipal corporation and political subdivision of the State of California;

**WHEREAS**, Millbrae owns and/or operates a sewage collection system that collects, treats, and discharges wastewater generated by residential, commercial, and industrial sources;

**WHEREAS**, Millbrae owns and operates a Publicly Owned Treatment Works ("POTW") that receives and treats wastewater from Millbrae's sewage collection system;

**WHEREAS**, Millbrae owns a municipal separate storm sewer system ("MS4") that serves the areas also served by Millbrae's sewage collection system;

**WHEREAS**, Millbrae is a permittee on Waste Discharge Requirements for City of Millbrae Water Pollution Control Plant, National Pollution Discharge Elimination System Permit No. CA0037532, Order No. R2-2001-0143 and Monitoring and Reporting Program No. R2-2001-0143, California Regional Water Quality Control Board San Francisco Bay Region ("2001 POTW Permit"), and  Order No. R2-2008-0071 ("2008 POTW Permit") (the 2001 POTW Permit and 2008 POTW Permit are referred to collectively as the "POTW Permits");

**WHEREAS**, Millbrae is a co-permittee on Waste Discharge Requirements for City/County Association Of Governments Of San Mateo County, *et al*., San Francisco Regional Water Quality Control Board, Order No. 99-058, NPDES Permit No. CAS0029921, reissued as Order No. 99-059 and subsequently amended by Order Nos. R2-2003-0023, R2-2004-0060, R2-2004-0062, and R2-2007-0027 ("MS4 Permit"). The MS4 Permit regulates discharges into and out of Millbrae's MS4;

**WHEREAS**, on September 30, 2009, Baykeeper issued a sixty (60) day notice letter ("Notice Letter") to Millbrae under section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).  The Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, and the Executive Director of the State Water Resources Control Board ("State Board"), as required by section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).  The Notice Letter was also sent to the Executive Officer of the Regional Water Quality Control Board, San Francisco Region ("Regional Board").  The Notice Letter alleged that Millbrae violated and continues to violate the Clean Water Act for its discharges of pollutants in violation of the POTW Permits and the MS4 Permit;

**WHEREAS**, on December 2, 2009, Baykeeper filed its complaint in the United States District Court for the Northern District of California ("District Court") against Millbrae, Case No. CV 09-05675 SBA (hereinafter "Complaint");

**WHEREAS**, Millbrae denies Baykeeper's allegations that it has violated the Clean Water Act and/or any of the permits as alleged in the Complaint and denies it has liability to Baykeeper or other citizen groups;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of the Complaint's claims or admission by Millbrae of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**WHEREAS,** all actions taken by Millbrae pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**WHEREAS**, for purposes of settlement, the Settling Parties waive all objections that they may have to the Court's jurisdiction to enter and retain jurisdiction over this Consent Decree.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

## I.  GENERAL OBJECTIVES

1.      The objectives of this Consent Decree are:

a.      To ensure that Millbrae uses, implements, and improves ways, means, and methods to prevent sanitary sewer overflows;

b.      To ensure that Millbrae uses, implements, and improves ways, means, and methods to prevent violations of, or to comply with, applicable permits, laws, and regulations as related to sanitary sewer overflows.

## II.      DEFINITIONS

2.   Unless otherwise expressly defined herein, terms used in this Consent Decree that are defined in the Clean Water Act or in regulations, or in rules promulgated under the Clean Water Act, have the meaning assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.      "CCTV" means closed-circuit television.

b.      "CIP" means Millbrae's sanitary sewer system capital improvement program.

c.      "Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.      "Design Storm" means a 10-year return period rainstorm with a duration of 24 hours as measured by a properly calibrated and monitored rain gage, or such rain gages within the City of Millbrae or, if no such gage is available, at the San Francisco International Airport.  Millbrae has determined that the 10-year Design Storm would yield 3.12 inches of rain in a 24 hour period.  The engineering design criteria to be used by Millbrae for a 10-year 24-hour storm shall take into account short duration intense rainfall periods by reference to USDA Urban Hydrology for Small Watersheds guidance TR-55 (June 1986) and use of the synthetic rainfall distribution curve, Figure B-1 SCS 24-Hour Rainfall Distribution of TR-55.  Millbrae shall use the distribution curve for a Type IA storm as referenced on Figure B-1 of TR-55 based on local rainfall quantities for the Millbrae area in San Mateo County, California.

e.      "FOG" means fats, oil, and grease.

f.     "FSE" means Food Service Establishment, any facility where food is served and intended for individual portion service, and includes the site at which individual portions are provided.

g.     "Infiltration" means groundwater, rainwater, or other surface water that may enter the sewage collection system through the pipes, joints, or cracks.

h.     "Inflow" means wastewater or water that may enter the sewage collection system through unpermitted connections, drains, or manholes.

i.     "I/I" means infiltration and inflow.

j.     "Lower Lateral" means the lateral line connecting a home or business to Millbrae's sewer main extending from the sewer main to Millbrae's clean out or to the back of the public right-of-way, whichever is applicable to the lateral connection.  Lower Laterals are generally connected to "upper laterals."  Millbrae owns twenty-two (22) miles of Lower Laterals within the City of Millbrae limits.  The remaining twenty-two (22) miles of Lower Laterals are considered "Private Laterals."

k.     "NPDES" means National Pollutant Discharge Elimination System.

l.     "Private Lateral" means the private sanitary sewer lateral or line connecting a home or other structure to the Lower Lateral, generally extending from the outside of the foundation of the structure to the public right-of-way or Millbrae's cleanout, whichever is applicable.  It also means twenty-two (22) miles of  "Lower Laterals" which are owned by the property owners in Millbrae and which are not maintained or controlled by Millbrae.

m.     "Millbrae Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership and responsibility of Millbrae that are used to convey wastewater generated by residential, commercial, and industrial sources to Millbrae's POTW.  For purposes of this Consent Decree, the Collection System does not include Private Upper Laterals and 22 miles of Private Lower Laterals or other privately owned or operated infrastructure that may connect to the Collection System.

n.     "Sanitary Sewer Overflow," "overflow", or "SSO" has the same meaning as those terms are defined in Section A.1. of the Statewide General Waste Discharge Requirements for Sanitary

Sewer Systems, State Water Resources Control Board Order No. 2006-0003 and Monitoring and Reporting Programs No. 2006-0003 DWQ, as amended by Order No. 2008-0002- EXEC ("SSO WDR"), or any amendment thereto, and which currently means: "any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from a sanitary sewer system.  SSOs include: (i) Overflows or releases of untreated or partially treated wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into buildings and on private property that are caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer system."  For purposes of this definition, "waters of the United States" has the meaning as set forth in 40 C.F.R. § 122.2.

o.    "Sewer Line Segment" means any section of publicly owned sewer line or pipe located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

p.    "SSMP" means the Sewer System Management Program implemented by Millbrae to monitor the condition, maintenance, and repair of the Millbrae Collection System.

q.    "Year" shall mean calendar year, unless otherwise specified.

### III.   JURISDICTION AND VENUE

3.   Baykeeper alleges the following jurisdictional allegations:

a.    This District Court has jurisdiction over the subject matter of the claims asserted by Baykeeper pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

b.    Venue is proper in the Northern District of California pursuant to section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district;

c.    The Complaint filed herein states claims for which relief can be granted against

Millbrae pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1365;

         d.     Baykeeper has standing to bring this action; and

         e.     The District Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## IV.   EFFECT OF CONSENT DECREE

4.   Baykeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Millbrae's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Millbrae to comply with all applicable federal, state and local laws and regulations governing any activity required by this Consent Decree.

5.   Nothing in this Consent Decree shall be construed as an admission by Millbrae, and does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by Millbrae of any fact, finding, conclusion, issue of law, or violation of law.

## V.  APPLICABILITY

6.   The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns.  The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

7.   The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, Millbrae does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and/or Complaint.

8.   No change in ownership or corporate or other legal status of Millbrae or any transfer of Millbrae's assets or liabilities shall in any way alter the responsibilities of Millbrae or any of its successors or assigns thereof, under this Consent Decree.  In any action to enforce this Consent Decree,

Millbrae shall not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree.

## VI.   EFFECTIVE DATE AND TERMINATION DATE

9.   The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice to comment on the [proposed] Consent Decree, i.e., the forty-fifth (45th) day following the United States Department of Justice's receipt of the [proposed] Consent Decree, or the date on which the Federal Agencies provide notice that no further review is required and the District Court enters the final Consent Decree, whichever occurs earlier.

10. This Consent Decree will terminate six (6) years from the Effective Date ("Termination Date") unless Baykeeper has invoked the Dispute Resolution Procedure set forth in Section XVIII.

## VII.   SSO AND SPILL REDUCTION PERFORMANCE STANDARDS

11. SSO Reduction Standards.  It is the goal of this Consent Decree to reduce Millbrae's Collection System SSOs to zero over time.  To approach the goal of zero SSOs, Millbrae shall reduce its SSOs and Lower Lateral spills as follows:

a.   Millbrae Collection System SSO Reduction Performance Standards.

| Calendar Year | Maximum Number of SSOs Per 100 Miles of Sewer Line/Year |
|---|---|
| 2010 | 65 |
| 2011 | 50 |
| 2012 | 30 |
| 2013 | 15 |
| 2014 | 7 |
| 2015 | 4 |
| 2016 | 3 |

12. For purposes of determining compliance with the Millbrae Collection System SSO Reduction Performance Standards, SSOs caused by storm events exceeding the Design Storm shall not be counted.

13. For purposes of determining compliance with the SSO Reduction Performance Standards, the miles of sewer lines, including twenty-two (22) miles of publicly-owned Lower Laterals as of the Effective Date equals seventy-seven (77) miles.

14. Compliance with the SSO Reduction Performance Standards shall be determined using the miles of sewer lines including Lower Laterals as subsequently updated in the Annual Report required under Section XV of this Consent Decree.

15. Failure to meet the SSO Reduction Performance Standards shall be a violation of this Consent Decree to be resolved by the Dispute Resolution procedure in Section XVIII below.

16. In order to reach the above SSO standards, Millbrae shall implement the programs described below.

17. Compliance or non-compliance with the SSO Reduction Performance Standards shall be documented by Millbrae in each year's Annual Report required under Section XV of this Consent Decree.

## VIII.   SSO REDUCTION ACTION PLAN

18.  If any Annual Report required under Section XV of this Consent Decree provided by Millbrae to Baykeeper documents compliance with the then-applicable SSO Reduction Performance Standards, Millbrae shall have no obligation to prepare a SSO Reduction Action Plan as set forth herein. However, if an Annual Report documents SSOs in excess of the SSO Reduction Performance Standards of this Consent Decree, Millbrae shall submit to Baykeeper by April 1st of that same year a SSO Reduction Action Plan that specifies the actions taken in the prior calendar year pursuant to the Consent Decree and additional measures to be taken during the current calendar year and in the future, which are designed to achieve compliance with the SSO Reduction Performance Standards set forth in this Consent Decree.  The SSO Reduction Action Plan shall include a proposed schedule for implementation of all actions proposed.  The Settling Parties shall endeavor to reach agreement on the final SSO Reduction Action Plan by the end of Millbrae's fiscal year (June 30).

19. Baykeeper shall provide Millbrae, in writing, with all recommended revisions to the SSO Reduction Action Plan within thirty (30) days of receipt of the document.  Millbrae shall consider each

of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper and Millbrae may seek Dispute Resolution pursuant to Section XVIII of this Consent Decree regarding disputes over the SSO Reduction Action Plan.  In such Dispute Resolution processes, to the extent the Settling Parties do not dispute original provisions or recommended revisions, Millbrae shall implement all undisputed provisions or revisions.  After the Settling Parties have reached agreement on the SSO Reduction Action Plan or after Dispute Resolution resolves any dispute concerning the SSO Reduction Action Plan, Millbrae shall begin implementation of the SSO Reduction Action Plan as an enforceable requirement of this Consent Decree within forty-five (45) days of agreement or upon the schedule set forth therein.

20. Millbrae shall address in the SSO Reduction Action Plan the various elements of such a plan that it believes will be necessary to achieve future compliance with the SSO Reduction Performance Standards, which may include any or all elements in its SSMP.

21. If additional funding is necessary to implement the SSO Reduction Action Plan, Millbrae shall seek such funding as soon as is practical.  If Millbrae seeks financing, but is unsuccessful, Millbrae shall disclose in the SSO Reduction Action Plan the extent of its efforts to obtain financing.

## IX.   CAPACITY ASSURANCE

22.  By June 30, 2011, Millbrae shall have completed sufficient flow monitoring of the Millbrae Collection System to support hydraulic modeling.  The monitoring shall be sufficient to calibrate and validate hydraulic modeling of the Millbrae Collection System.

23. By August 1, 2011, Millbrae shall submit a work plan for hydraulic modeling of the Millbrae Collection System.  The hydraulic modeling shall be sufficient to identify all necessary capacity improvements to convey peak wet weather flows to the Millbrae Water Pollution Control Plant without SSOs caused by insufficient capacity in the Millbrae Collection System.  The work plan shall contain a schedule for hydraulic modeling and all supporting efforts such as smoke testing, dye testing and other measures necessary to identify sources of I/I.

24. Capacity Assurance Report.  By June 30, 2012, Millbrae shall provide a copy of a Capacity

Assurance Report to Baykeeper identifying all necessary capacity improvements to convey peak wet weather flows to the Millbrae POTW without SSOs caused by insufficient capacity.  The Capacity Assurance Report shall include a schedule for construction of all necessary capacity improvements identified in the Capacity Assurance Report based on Design Storm criteria.  The schedule for construction of capacity improvements shall be as expeditious as is practicable and Millbrae shall complete construction of such improvements within four (4) years from the date of the final Capacity Assurance Report.  In no event shall the completion of the construction of the improvements identified in the Capacity Assurance Report extend beyond the Termination Date.

25. Extension of Time to Complete Capacity Improvements.  Millbrae may request an extension of time to implement the capacity improvements beyond the Termination Date based on ability to pay.  Such an extension shall require a demonstration of significant hardship to Millbrae ratepayers, by showing that:

a. Millbrae's sewer rates are equal to three percent (3%) of annual household income for residents within Millbrae; and

b. Millbrae has made timely and complete applications for all available bond funding, and either no bond funding is available, or bond funding is inadequate.

The demonstration set forth in (a) and (b) above shall be made in writing, and Millbrae shall provide all documents reasonably related to the extension request within fifteen (15) days of request by Baykeeper.

26. In the event Millbrae requests an extension of time to complete capacity improvements as described in paragraph 25 above, Millbrae shall pay Twenty Thousand Dollars ($20,000) within fourteen (14) days of requesting the extension, to compensate Baykeeper for time spent reviewing Millbrae's request.  In the event the Settling Parties agree to extend the Consent Decree beyond the Termination Date, the Settling Parties shall then meet and confer pursuant to Section XVIII of this Consent Decree to determine the additional funds Millbrae shall pay to Baykeeper to monitor compliance with the Consent Decree beyond the Termination Date.  All payments under this section shall be made payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to 1004-A O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery.  Any money remaining when

this Consent Decree terminates shall be awarded to the Environmental Mitigation Project recipient identified in paragraph 68 below.

27. In the event Millbrae makes the showing described in paragraph 25 and provides the funding set forth in paragraph 26, Baykeeper will not unreasonably refuse to agree to extend the term of the Consent Decree beyond the Termination Date. The term of the extension shall be no greater than sufficient to fund the identified capacity projects consistent with the funding identified in paragraph 25, subsections (a) and (b) above. Any extension pursuant to this section shall be incorporated into this Consent Decree pursuant to paragraph 98 (Modification of the Consent Decree) below.

28. <u>Inflow and Infiltration (I/I)</u>. I/I identified within Millbrae's Collection System by the hydraulic modeling, smoke testing, dye testing, and condition assessment programs set forth herein, shall be identified in the Capacity Assurance Report and shall be addressed within the Capacity Assurance Report. Major sources of I/I shall be removed as expeditiously as practicable. The Capacity Assurance Report shall include capacity improvements for the Millbrae Collection System designed to eliminate capacity-related SSOs during rain events of less than the Design Storm.

29. <u>Final Compliance Report</u>. Millbrae shall provide to Baykeeper a final compliance report for Baykeeper's review and comment. The final compliance report shall be submitted to Baykeeper a minimum of one (1) year prior to the Termination Date and the report shall provide the status of all of the construction and other related activities required in the Capacity Assurance Report. The report shall provide sufficient information and detail to reasonably demonstrate that Millbrae has undertaken and will have completed sufficient activities to fully comply with the capacity related SSOs for rain events less than the Design Storm by the Termination Date. This final compliance report shall be subject to review, comment and referral to the Dispute Resolution Procedures as set forth in Section XVIII of this Consent Decree.

30. <u>Review of Submittals</u>. Baykeeper shall have the right to review the work plan for hydraulic modeling and provide comments thereon. Baykeeper shall provide Millbrae, in writing, with all recommended revisions to the hydraulic modeling work plan within thirty (30) days of receipt of the document. Millbrae shall consider each of Baykeeper's recommended revisions and indicate within

thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper and Millbrae may seek Dispute Resolution pursuant to Section XVIII of this Consent Decree regarding disputes over the hydraulic modeling work plan.

31. Baykeeper shall also provide Millbrae, in writing, with all recommended revisions to the Capacity Assurance Report within thirty (30) days of receipt of the document.  Millbrae shall consider each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper and Millbrae may seek Dispute Resolution pursuant to Section XVIII of this Consent Decree regarding disputes over the Capacity Assurance Report.

32. Neither Settling Party shall invoke Dispute Resolution until both Parties have made good faith efforts to resolve any professional differences with regard to the hydraulic modeling work plan and the Capacity Assurance Report.

## X.   SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT

33.  Within four (4) years of the Effective Date of the Consent Decree, Millbrae shall complete closed circuit television ("CCTV") inspection and condition assessment of all gravity Sewer Line Segments in the Millbrae Collection System that are fifteen (15) inches and smaller in diameter and are greater than ten (10) years old.  Millbrae shall inspect and assess no less than ten (10) miles of sewer main in the first year of this Consent Decree and no less than an additional fifteen (15) miles by the end of the second year of this Consent Decree.

34. Within one hundred and twenty (120) days of the Effective Date of the Consent Decree, Millbrae shall propose to Baykeeper a schedule for CCTV inspections.  The schedule shall be prioritized to first inspect areas with known SSO problems and second to systematically CCTV all other lines per basin.

35. Defects shall be coded and scored using the sanitary sewer system assessment codes and scores set forth in the Pipeline Assessment Condition Protocol ("PACP") coding system.  The score for each segment is then weighted based on the PACP score to determine a response as shown in the

Timeframe for Actions to Correct Observed Defects below.

36. Any sewer line or Lower Lateral where the passage of the CCTV camera was blocked by the condition of the pipe shall result in the segment being defined as failed.  That sewer line or Millbrae-owned Lower Lateral shall be cleaned within forty-eight (48) hours and shall be re-inspected and flushed bi-monthly until permanent repairs required by the table set out in paragraph 38 can be made.

37. Inspections shall be accomplished using CCTV.  The work products shall include an inspection database, prioritized repair projects, and prioritized rehabilitation/replacement projects.  The annual inspection quantity will include the sum of the lengths of all of the gravity sewers where inspection was completed.  Segments failing to pass the CCTV camera shall not be included in the annual inspection quantity.  Where a CCTV camera fails to pass through a given segment, and after repair and and/or replacement of that segment the camera subsequently passes, the segment may be included in the annual inspection quantity.

38. Millbrae shall correct defects that may cause an SSO within an appropriate timeframe. Based on the PACP scores derived during CCTV inspections, Millbrae's timeframes for actions to correct observed defects in the Sewer Line Segments are shown in the table entitled Timeframe for Actions to Correct Observed Defects set out below.

**Timeframe for Actions to Correct Observed Defects**

| Observed Defect | Corrective Action | Time Frame (from date defect observed) | Other Action |
|---|---|---|---|
| PACP Grade 4 or 5 Maintenance Defect | Clean sewer | 30 days | Place on trouble spot cleaning or mechanical root control schedule |
| PACP Grade 3 Maintenance Defect | Clean sewer | 4 months | Place on trouble spot cleaning or mechanical root control schedule |
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Repair rehabilitate or replace sewer | ASAP (no more than 90 days) | N/A |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, rehabilitate, replace, or re-inspect sewer | 2 years | Re-inspect within one year if corrective action not taken |

| PACP Grade 4 Structural Defect | Repair, rehabilitate, or re-inspect sewer | 5 years | Re-inspect within three years if corrective action not taken |

39. In addition to actions required above, when a SSO occurs due to the condition of a Millbrae-owned Lower Lateral, Millbrae shall, within ten (10) working days of the SSO, inspect the Millbrae-owned Lower Lateral with CCTV, assess its condition, and within thirty (30) days repair defects that were the cause of the SSO.

40. If Millbrae determines that the cause of a SSO was roots or debris entering the Millbrae-owned Lower Lateral through defects in the Private Lateral, Millbrae shall require the property owner to inspect the Private Lateral and to make all necessary repairs required to prevent a reoccurrence of the SSO within ninety (90) days.

41. In the Annual Report required under Section XV of this Consent Decree, Millbrae shall provide information regarding condition assessment, rehabilitation, and replacement.  At a minimum the Annual Report must include: the miles of sewer that were assessed in the previous year; the number of Lower Laterals that were assessed in the preceding year; the miles of sewer assessed receiving each grade in Millbrae's grading system; identification of the sewer segments with grades of 3, 4 or 5 under the PACP scoring system; and a summary of the number and identification of the sewers and Lower Laterals repaired, rehabilitated and/or replaced during the previous year.

## XI.   IMPLEMENTATION OF FATS, OILS AND GREASE PROGRAM

42.  Within ninety (90) days of the Effective Date of this Consent Decree, Millbrae shall institute a residential outreach program to educate the public on proper FOG disposal in order to reduce the discharge of FOG to the Millbrae Collection System from residential sources.    Millbrae shall institute a commercial outreach program to educate commercial establishments with the potential to discharge FOG to the sanitary sewer system on the use of Best Management Practices ("BMPs"), and the proper maintenance of grease recovery devices to reduce FOG from commercial sources consistent with the device manufacturer's requirements.

43.  Millbrae shall continue to require the installation of a grease interceptor at any existing FSE

which has caused an SSO due to FOG.

44. Millbrae shall continue to cause the inspection of each of its FOG accounts no less than once a year.  FOG accounts found in violation of Millbrae ordinances shall be re-inspected within thirty (30) days.  Repeat violations shall be met with increased enforcement actions as deemed necessary by Millbrae to enforce compliance.

45. Millbrae shall continue to send a Notice of Correction ("NOC") to any FSE found to be the cause of a FOG related SSO.  The NOC shall describe the cause of the SSO that has been attributed to the FSE, and outline pertinent parts of Millbrae's FOG Ordinance and suggest remediation methods and corrective actions to comply.  Such NOC will require the recipient to acknowledge receipt within thirty (30) days.  However, Millbrae has the discretion to issue a Notice of Violation, conduct a Show Cause Hearing on the violation(s) and issue fines,  citation(s) or refer a case to its City Attorney in lieu of a NOC when circumstances indicate more action is appropriate.

## XII.   SEWER CLEANING, HOT SPOTS, AND LATERAL PROGRAMS

46.  Routine Cleaning.  Millbrae shall continue to clean all of its gravity sanitary Sewer Line Segments fifteen (15) inches in diameter or smaller in the Millbrae Collection System in accordance with a schedule that is appropriate for the prevention of SSOs, but in any event Millbrae shall clean the entire Millbrae Collection System at least once every five (5) years. Lower Laterals maintained by Millbrae shall be cleaned and inspected after a reported blockage in the Lower Lateral whether or not it caused an SSO.

47. Hot Spot Cleaning Program. Millbrae shall include any Sewer Line Segment that has a blockage caused by roots, debris, grease or pipe condition into its Hot Spot Cleaning Program.  Within one hundred and twenty (120) days from the Effective Date of the Consent Decree, Millbrae shall develop and submit to Baykeeper for comments a Hot Spot Cleaning Work Plan ("HSCWP").  The HSCWP shall include a listing of all lines requiring Hot Spot Cleaning and the cleaning frequency for each identified line.  The HSCWP shall include the rationale relied upon to select the main sewer segments included in the HSCWP and to determine cleaning frequencies.  Cleaning frequencies for the Hot Spot Cleaning Program shall include: 1 month, 2 month, 3 month, and 6 month cycles as needed.

The HSCWP shall incorporate the methodology set forth below in Figure 1 ("Preventive Maintenance Scheduling Flow Chart") below.  If any Sewer Line Segment included in the HSCWP is subsequently repaired or replaced and the need for the placement of the segment in the HSCWP is eliminated, the Sewer Line Segment may be removed from the HSCWP and shall be indicated in the Annual Report required by Section XV of this Consent Decree.



Figure 1 - Preventive Maintenance Scheduling Flow Chart.

48. Baykeeper shall review and provide Millbrae with comments on the HSCWP within thirty (30) days of submittal. Millbrae shall consider each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper or Millbrae may seek Dispute Resolution pursuant to Section XVIII of this Consent Decree regarding disputes over the HSCWP.

49. The Parties shall attempt to resolve any disputes regarding the HSCWP in good faith. Neither Settling Party shall invoke Dispute Resolution until good faith efforts to resolve disputes have been completed. Millbrae shall immediately implement all portions of the Hot Spot Cleaning Program not in dispute and shall implement all portions of the Final HSCWP not previously implemented immediately upon resolution of disputes.

50. The Hot Spot Cleaning Program results shall be maintained in a database by Millbrae.

51. Millbrae shall collect all observations made by its sewer cleaning crews regarding the extent and nature of materials removed during the cleaning process.  The observations shall be recorded in Millbrae's database.  Millbrae shall maintain or change the frequency of its hot spot cleaning for a Sewer Line Segment based on the Sewer Cleaning Results Matrix below, in accordance with the row labeled "Action," below.

///

///

///

///

///

///

**Sewer Cleaning Results Matrix**

| | Clear | Light | Moderate | Heavy |
|---|---|---|---|---|
| **Debris** | No observable debris | Minor amount of debris<br>1 pass | moderate amounts of debris<br> 2-3 passes | Significant amounts of debris<br>More than 4 passes<br>Operator concern for future stoppage |
| **Grease** | No observable grease | Minor amounts of grease<br>15 minutes or less to clean<br>1 pass | Small "chunks"<br>No "logs"<br>15-30 minutes to clean<br> 2-3 passes | Big "chunks" or "logs"<br>More than 4 passes<br>Operator concern for future stoppage |
| **Roots** | No observable roots | Minor amounts of roots<br>1 pass | Thin stringy roots<br>No "clumps"<br>2-3 passes | Thick roots<br>Large "clumps"<br>More than 4 passes<br>Operator concern for future stoppage |
| **Debris:** Structural pipe fragments soil, rock, etc. | No observable materials | Specify material (if possible)<br>Minor amounts of material | Specify material Moderate amounts of material per line segment | Specify material<br>Significant amounts of material per line segment<br>Operator concern for future stoppage |
| **Action** | Decrease frequency to next lower frequency after 3 consecutive results (e.g. 6 months to 12 months) | Continue current maintenance frequency | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) |

52. Changes in cleaning frequency based upon cleaning results shall be as follows:

    a.  No reduction in cleaning frequency shall be made in a sewer line segment with a previous history of SSOs without the approval of an appropriate Collection Public Works Supervisor  or the Public Works Superintendant;

    b.  A change from "Moderate" or "Heavy" after three (3) consecutive cleanings result in "Clear" will cause the cleaning frequency to be reduced to the next lower cleaning frequency;

c.   Results of "Medium" or "Heavy" shall cause the cleaning frequency to be increased to the next highest frequency.

53. At a minimum, main Sewer Line Segments shall be added to the Hot Spot Cleaning Program based on the findings from any CCTV Condition Assessment using Millbrae's current system of Defect Codes and Ratings.  Any Sewer Line Segments with a condition assessment rating of "Medium" or "Heavy" for roots, grease, or debris will be added to the Hot Spot Cleaning Program.  A Sewer Line Segment with a condition assessment rating of "Medium" for roots, grease or debris will be added at a six (6) month cleaning frequency.  A Sewer Line Segment with a condition assessment rating of "Heavy" for roots, grease or debris will be added at a three (3) month cleaning frequency.

54. <u>Sewer Cleaning Quality Assurance/Quality Control Program</u>:  Millbrae shall institute and maintain a quality assurance/quality control ("QA/QC") program adequate to ensure proper and complete cleaning of sewers.  The quality assurance/quality control program shall consist of spot checking the cleaning quality in a minimum of two percent (2%) by Sewer Line Segment of the cleaned sewers on a monthly basis using CCTV to ensure adequate cleaning.  If the cleaning is found to be inadequate, the Sewer Line Segment will be re-cleaned within thirty (30) days.  If more than ten percent (10%) of the spot checked Sewer Line Segments require re-cleaning in any given month, spot checking of the system shall be increased to five percent (5%).  Where spot checking of the system has increased to five percent (5%) pursuant to this Section, such spot checking will not be reduced to two percent (2%) until three consecutive months show two percent (2%) or less of the pipes inspected required re-cleaning.  If a required inspection frequency increase is identified with a single crew, the increased inspection schedule will only apply to that crew.

55. If scheduled or hot spot cleaning of a segment or area cannot be properly accomplished due to pipe condition or access limitations, the condition of the segment shall be considered failing and shall be repaired within one hundred twenty (120) days.

56. Millbrae shall identify the sewer lines cleaned and the results of its QA/QC program each year in the Annual Report required by Section XV of this Consent Decree.

57. If Millbrae's Hot Spot Cleaning Program and annual cleaning system fails to reduce the SSO

rate to that required by the Millbrae Collection System SSO Reduction Performance Standards in Section VII by 2011, Millbrae shall evaluate its current cleaning protocols and revise these cleaning protocols within thirty (30) days.  The new protocols shall be provided to Baykeeper for review and comment.

58. Baykeeper shall review and provide Millbrae with comments on Millbrae's revised cleaning protocols within thirty (30) days of submittal. Millbrae shall consider each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper or Millbrae may seek Dispute Resolution pursuant to Section XVIII of this Consent Decree regarding disputes over the new cleaning protocols.

59. The Settling Parties shall attempt to resolve any disputes regarding the new cleaning protocols in good faith.  Neither Settling Party shall invoke Dispute Resolution until good faith efforts to resolve disputes have been completed. Millbrae shall immediately implement all portions of the new cleaning protocols not in dispute and shall implement all portions of the final new cleaning protocols not previously implemented immediately upon resolution of disputes.

## XIII.  PRIVATE LATERALS

60.  Within one-hundred eighty (180) days of the Effective Date of this Consent Decree, Millbrae shall propose and recommend to the Millbrae Council the adoption of amendments to the Municipal Code to:

    a.  Require inspection of Private Laterals as a condition to obtaining a building permit if the project adds plumbing fixtures or more than twenty-five percent (25%) of the square footage of the structure is being remodeled.  See MCC 8.20.470;

    b.  Set standards for evaluating the condition of Private Laterals subject to the provisions in subsections (a)-(b) above. See MCC 8.20.430;

    c.  Require the Private Lateral owner to repair and/or replace the Private Lateral within one hundred and eighty (180) days where an SSO has occurred from the Millbrae

Collection System as a result of a blockage, break or other issue in the Private Lateral, unless the property owned by the Private Lateral owner is undergoing an extensive remodeling, in which case the repair and/or replacement shall occur no later than the new occupancy date, or the Private Lateral owner claims financial hardship, in which case Millbrae may be required to conduct the repair or replacement.  See MCC 8.20.440;

d.  Require any defects in the Private Lateral that causes the Private Lateral to fail the inspection be repaired or replaced within ninety (90) days for all remodeling efforts or sale of property.  Defects causing a Private Lateral to fail the inspection shall include but not be limited to the following: pipe failure; open joints; and/or openings in the pipe, which allow root intrusion.  See MCC 8.20.440;

e.  Require the Private Lateral owner, within one hundred twenty (120) days of notification by Millbrae, to remove roots from their Private Laterals that are growing into Lower Laterals as determined by Millbrae and make all necessary repairs to the Private Lateral necessary to prevent a reoccurrence of roots intrusion that reaches the Lower Lateral. See MCC 8.20.430;

f.  No later than six (6) months from the Effective Date of the Consent Decree, Millbrae shall adopt an ordinance requiring all property owners or their contractors to insert a temporary trap downstream of their Private Lateral when performing maintenance to remove a blockage, so to ensure any rootball, debris, or other item is not flushed into the Millbrae Collection System and potentially causing an additional blockage.

61. Millbrae shall continue to implement the following provisions of its Municipal Code concerning maintenance and inspection of Private Laterals:

a.  Require the property owner to maintain the Private Lateral at the owner's expense, as required by Title 8, Section 20.430 of the Millbrae Municipal Code;

b.  Require the property owner to abate all leaks, breaks and improper connections to the Private Lateral at the owner's expense, as required by Title 8, Section 20.440 of the

Millbrae Municipal Code;

c.   Require the property owner to test the sewer lateral for inflow and infiltration and make all necessary repairs and/or replacement prior to transfer of title upon the sale of the property, as required by Title 8, Section 20.450 of the Millbrae Municipal Code;

d.   Require that the property owner install and maintain cleanouts, if not already existing, at the owner's expense in the event of new construction on the property, remodels where plumbing fixtures are added to the property and/or more than twenty-five percent 25% of the building area is being remodeled, upon repair or replacement of the Private Lateral, whenever backflow protection and/or relief devices are installed, where property has been damaged by blockage in the Millbrae Collection System, on all structures where a pump is used to lift sewage to the Private Lateral and to the Millbrae Collection System, and in buildings where the elevation of any floor is at or below the invert of the Millbrae Collection System, as required by Title 8, Section 20.460 of the Millbrae Municipal Code; and

e.   Require that the property owner install and maintain backflow protection and relief devices in the event of new construction on the property, remodels, repair or replacement of the Private Lateral, where property has been damaged by a blockage in the Millbrae Collection System, on all structures where a pump is used to lift sewage to the Private Lateral and to the Millbrae Collection System, and in buildings where the elevation of any floor is at or below the invert of the Millbrae Collection System, as required by Title 8, Section 20.470 of the Millbrae Municipal Code.

## XIV.   CAPITAL IMPROVEMENT PROGRAM

62. Millbrae shall complete improvements included in its current Capital Improvement Program ("CIP"), which is attached hereto as Appendix A.  Additionally, any Sewer Line Segments requiring replacement based on the results of the condition assessment program described in Section X of this Consent Decree shall also be included in the current CIP.  The results of the condition assessment program and subsequent updates to Millbrae's CIP will be provided to Baykeeper for review to ensure

1    that mandatory replacements occur as scheduled.

2        63. City shall include in its CIP the repair, replacement, or rehabilitation of those sewer lines that

3    cannot be kept free of stoppages by a reasonable program of maintenance, to add new sewer lines or

4    install larger sewer lines as needed to address inadequate capacity of any existing sewer line to handle

5    peak wet weather flows as determined by the Capacity Assurance Report detailed in Section IX of this

6    Consent Decree, and to build other capital improvements (such as new or replacement manholes or

7    improved or expanded pump stations) as needed to avoid line breakages or collapse, reduce I/I and dry

8    weather infiltration, ensure adequate Millbrae Collection System flow conveyance capacity, and attain

9    SSO Reduction Performance Goals.  Funding for additions to the CIP will not be available until

10   Millbrae's new POTW, currently under construction, is completed in FY 2011.

11       64. Millbrae shall provide the necessary funding to complete the projects outlined in the CIP.

12       65. When performing any CIP projects, Millbrae shall comply with the Statewide General Permit

13   for Storm Water Discharges Associated with Construction Activities, NPDES No. CAS000002, and the

14   Municipal Regional Stormwater NPDES Permit, Regional Board, NPDES Permit No. CAS612008.  In

15   addition, Millbrae shall implement appropriate storm water BMPs to control storm water runoff from

16   any sites less than one acre in size where Millbrae is conducting construction required pursuant to this

17   Consent Decree.   Baykeeper or Millbrae may seek Dispute Resolution pursuant to Section XVIII of this

18   Consent Decree regarding disputes over compliance with this paragraph.

19       66. Millbrae shall provide Baykeeper with the CIP timeline and funding schedule for review and

20   comment.  Millbrae shall consider each of Baykeeper's recommended revisions and indicate within

21   thirty (30) days of receipt of Baykeeper's comments whether Millbrae accepts each such

22   recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments

23   are being rejected.  Baykeeper or Millbrae may seek dispute resolution pursuant to Section XVIII of this

24   Consent Decree regarding disputes over the CIP.

25                                   **XV.   ANNUAL REPORT**

26

27       67. Millbrae shall submit an Annual Report to Baykeeper for each year that this Consent Decree

28

is in effect.  Millbrae shall submit the first Annual Report to Baykeeper by May 1, 2011, and shall submit all subsequent Annual Reports by March 1 of each year that this Consent Decree remains in effect.  The Annual Report shall:

    a.   Include the specific annual reporting requirements as set forth in Sections VII, X, and XII of this Consent Decree.

    b.   Provide details relevant to Millbrae's implementation of, and compliance with, this Consent Decree during the preceding year, including any program modifications during the prior calendar year or delays.

    c.   Assess Millbrae's progress towards meeting the requirements of the Consent Decree.

## XVI.   ENVIRONMENTAL MITIGATION PROJECT AND FEES AND COSTS

68. <u>Rose Foundation Payment</u>.  To remediate perceived environmental harms resulting from the allegations in the Complaint, Millbrae shall pay to the Rose Foundation for Communities and the Environment the total sum of  Three Hundred Thousand Dollars ($300,000) ("the Mitigation Payment") to be used to fund environmental project activities that will benefit the San Francisco Bay or its tributaries.  In no event shall Baykeeper receive any of the Mitigation Payment to use for any purpose.  Payment of One Thousand Dollars ($100,000) shall be made within thirty (30) days of the Effective Date of this Consent Decree, to:

          The Rose Foundation for Communities and the Environment
          6008 College Avenue, Suite 10
          Oakland, California 94618
          Attention: Tim Little

Payment of the remaining balance shall be made to the Rose Foundation at the above address in two (2) equal installments of One Thousand Dollars ($100,000) each, and shall be made on August 1, 2011 and August 1, 2012, respectively.

69. <u>Low Impact Development Projects</u>.  As additional environmental mitigation projects, Millbrae shall establish a dedicated fund in the total amount of Two Hundred and Twenty Five Thousand Dollars ($225,000) to be used over the life of the Consent Decree for replacement of "Y Private Lateral Lines" and Low Impact Development Projects ("LID Projects").  Millbrae shall spend no

less than Seventy Five Thousand Dollars ($75,000) of this fund on LID Projects.  Furthermore:

  a. For purposes of this paragraph, "Y Private Lateral Lines" means private sewer lateral lines that connect more than one dwelling to a City sewer main line.

  b. For purposes of this paragraph  "LID Projects" means any of the actions or activities listed in the attached Appendix B.

  c. If Millbrae has not spent all of the Two Hundred and Twenty Five Thousand Dollar ($225,000) fund required by this paragraph on Y Private Lateral Line replacement or LID Projects within thirty (30) days of Termination of the Consent Decree, Millbrae shall tender payment of the difference between the amount it has spent and the Two Hundred and Twenty Five Thousand Dollars ($225,000) to the Rose Foundation for the Environment to fund environmental project activities that will benefit the San Francisco Bay or its tributaries.  Millbrae shall simultaneously send notice to Baykeeper of any such payments to the Rose Foundation.

  d. Millbrae shall include in its Annual Report submitted pursuant to Section XV of this Consent Decree an accounting of how Millbrae has expended the fund required pursuant to this paragraph, including an itemization of how many Y Lateral Lines Millbrae has replaced and the cost of this replacement and a description of the LID Projects implemented and the cost of these projects.  In addition, Millbrae shall provide a final environmental project report thirty (30) days before the Termination Date of this Consent Decree that provides a final accounting of how Millbrae has expended the fund required pursuant to this paragraph.

70. Millbrae shall not refer to completion or implementation of the supplemental environmental projects required under this Consent Decree in any representation to the public without explicitly stating in any such representation that it undertook completion or implementation of the supplemental environmental projects in response to a Clean Water Act enforcement action brought by Baykeeper.

71. Litigation Fees and Costs.  To help defray Baykeeper's attorneys, consultant, and expert fees and costs, and any other costs incurred as a result of investigating, filing this action, and negotiating a

settlement, Millbrae shall pay Baykeeper the sum of Two Hundred Thousand Dollars ($200,000) which shall include all attorneys' fees and costs for all services performed by and on behalf of Baykeeper by its attorneys and consultants up to and through the Effective Date of this Consent Decree. The payment shall be made within twenty-one (21) days of the Effective Date of this Consent Decree. The payment shall be made in the form of a check payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to: 1004-A O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery, and shall constitute full payment for all costs of litigation incurred by Baykeeper that have or could have been claimed in connection with or arising out of Baykeeper's lawsuit, up to and including the Effective Date.

72. Compliance Monitoring. Millbrae agrees to compensate Baykeeper for time to be spent by legal staff or technical consultants reviewing compliance reports and any other documents, or participating in any meet and confer process under this Consent Decree. To this end, Millbrae shall pay Twenty-Five Thousand Dollars ($25,000) within twenty-one (21) days of the Effective Date of this Consent Decree. In the event Millbrae fails to meet the SSO Reduction Performance Standards in a given year, and submits an SSO Reduction Action Plan pursuant to Section VIII of this Consent Decree, Millbrae shall pay Twenty Thousand Dollars ($20,000) within seven (7) days of submitting the Plan to compensate Baykeeper for time spent reviewing and commenting on the Plan. All payments under this section shall be made payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery. Any compliance monitoring money remaining when this Consent Decree terminates shall be awarded to the Environmental Mitigation Project recipient identified above.

## XVII.   COMMITMENTS OF BAYKEEPER

73. Submission of Consent Decree to Federal Agencies. Baykeeper shall submit a copy of this Consent Decree to EPA and the United States Department of Justice ("DOJ") within three (3) days of its execution for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided by Baykeeper to Millbrae upon request. In the event that EPA or DOJ comment

negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

74. <u>Filing of Consent Decree With the Court</u>.  Baykeeper shall file this Consent Decree with the District Court within three (3) days of the Effective Date.  Baykeeper is responsible for notifying Millbrae of the District Court's entry of the Order dismissing these claims with prejudice.  Such notification can be satisfied by the Northern District of California's Case Management/Electronic Case Filing ("CM/ECF") notification to the Settling Parties that the Order was executed and entered by the District Court.

## XVIII.   DISPUTE RESOLUTION

75. This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

76. <u>Meet and Confer</u>.  Either Settling Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute and of the Settling Party's proposal to resolve the dispute under this Section.  The Settling Parties shall then meet and confer in an attempt to resolve the dispute informally over a period of ten (10) calendar days from the date of the notice.

77. If the Settling Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, the Settling Party invoking the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Northern District of California.  The Settling Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

78. If any Settling Party invokes any of the provisions of this Section to enforce the terms and conditions of this Consent Decree, the prevailing Settling Party shall be entitled to recover reasonable fees incurred to enforce the terms of this Consent Decree consistent with the provisions of sections 505 and 309 of the Clean Water Act, 33 U.S.C. §§ 1365, 1319.

1
2

### XIX.   MUTUAL RELEASE OF LIABILITY, COVENANT NOT TO SUE, AND FORCE MAJEURE

3

79. In consideration of the above, upon the Effective Date of this Consent Decree, the Settling Parties hereby fully release, except for claims for the Millbrae's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms, and corporations having an interest in them, from any and all alleged Clean Water Act violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

80. Nothing in this Consent Decree limits or otherwise affects Baykeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Millbrae.

81. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Millbrae maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

82. Force Majeure.  Millbrae shall notify Baykeeper pursuant to the terms of this paragraph when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Millbrae, due to circumstances beyond the control of Millbrae or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Millbrae.  Any delays due to Millbrae's failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree in normal inclement weather shall not, in any event, be considered to be circumstances beyond Millbrae's control.  Financial inability shall not, in any event, be considered to be circumstances beyond Millbrae's control.

a.   If Millbrae claims impossibility, it shall notify Baykeeper in writing within thirty (30) days of the date that Millbrae first knew of the event or circumstance that caused or

would cause a violation of this Consent Decree, or the date Millbrae should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Millbrae to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.  Millbrae shall adopt all reasonable measures to avoid and minimize such delays.

b. The Settling Parties shall meet and confer in good-faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Millbrae, due to circumstances beyond the control of Millbrae that could not have been reasonably foreseen and prevented by the exercise of due diligence by Millbrae, new performance deadlines shall be established.

c. If Baykeeper disagrees with Millbrae's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party shall have the right to invoke the Dispute Resolution procedures pursuant to Section XVIII of this Consent Decree.  In such proceeding, Millbrae shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

83. The Dispute Resolution procedures set forth in Section XVIII shall be the exclusive mechanism for resolving disputes between the Settling Parties with regard to any aspect of this Consent Decree.

## XX.  STIPULATED PAYMENTS

84. <u>Stipulated Payments for Failure to Comply with Consent Decree</u>.  Except as specifically provided in paragraph 85 below, Millbrae shall make a stipulated payment of One Thousand Dollars

($1,000) for each missed deadline and/or failure to comply with a requirement included in or contemplated by this Consent Decree, unless the failure to comply is from a Force Majeure Event. Payments for missed deadlines shall be made for the restoration and/or improvement of the San Francisco Bay watershed, and shall be awarded to the Environmental Mitigation Project recipient identified in paragraph 68 above.  Millbrae agrees to make the stipulated payment within thirty (30) days of a missed deadline and mail via certified mail or overnight delivery.  Millbrae shall provide Baykeeper with a copy of each such payment.

85. Millbrae agrees to pay stipulated payments in the event complete reports covered by this Section are not timely submitted.  Reports covered by this Section include the following Sections from this Consent Decree: the SSO Reduction Action Plan under Section VIII; the Capacity Assurance Report and the hydraulic modeling work plan under Section IX; and the Annual Reports under Section XV. Millbrae shall have a fourteen (14) day grace period after the due date for the reports covered by this Section prior to imposition of stipulated payments for the first instance of delayed reporting.  Though Baykeeper is not obligated to notify Millbrae, it may do so in order to allow Millbrae to promptly address any alleged deficiency after any submission date has been missed.

86. Millbrae shall pay the following stipulated payments in the event that it files a late or incomplete report covered herein after the grace period:

    a.   For a report submitted after the grace period, Millbrae shall pay $100 per day until the report is filed, up to thirty (30) days for a total amount of $3,000.

    b.   For any report more than thirty (30) days late, Millbrae shall pay $5,000.

    c.   For any report more than ninety (90) days late, Millbrae shall pay $10,000.

    d.   The above payments are cumulative, as applicable, to a maximum payment of $18,000 per report.

87. In the case of a late report, Millbrae shall send Baykeeper the report as per Section XXI of this Consent Decree.  Baykeeper shall notify Millbrae of receipt of the late report and shall include an invoice for the amount of the stipulated payment, if any, due and payable.  Millbrae shall contact Baykeeper within five (5) working days if Millbrae disagrees with Baykeeper's stipulated payment

calculation and may meet and confer with Baykeeper or seek Dispute Resolution pursuant to Section XVIII of this Consent Decree.  Millbrae shall pay any stipulated payments due pursuant to this Consent Decree within thirty (30) days after receipt of Baykeeper's invoice itemizing the stipulated payment liability, or thirty (30) days after resolution of a dispute if the dispute resolution process has been invoked pursuant to Section XVIII of this Consent Decree.  All payments of stipulated payments described in this Consent Decree shall be paid by Millbrae to the "*Rose Foundation for Communities and the Environment*" and sent via overnight mail to: Rose Foundation for Communities and the Environment, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.  Nothing in this Consent Decree shall prevent Baykeeper from waiving any stipulated payments, which might be due under this Section, based on the outcome of the Dispute Resolution process, or based on Millbrae's good faith efforts.

## XXI.  NOTICES AND SUBMISSIONS

88. Millbrae agrees to provide Baykeeper with all documents or reports required or contemplated by this Consent Decree.  All documents shall be directed to the following individuals at the addresses specified below unless specifically stated otherwise herein and shall be sent by certified or overnight delivery, and by electronic mail.  Any change in the individuals or addresses designated by any Settling Party must be made in writing to all Settling Parties.

> If to BAYKEEPER:
>
> Daniel Cooper
> Samantha Williams
> LAWYERS FOR CLEAN WATER, INC.
> 1004 O'Reilly Avenue
> San Francisco, California 94129
> Telephone: (415) 440-6520
> Email: daniel@lawyersforcleanwater.com
>         samantha@lawyersforcleanwater.com

Jason Flanders
SAN FRANCISCO BAYKEEPER, INC.
785 Market Street, Suite 850
San Francisco, California 94103-2023
Email: jason@baykeeper.org
(email delivery only preferred)

If to MILLBRAE:

Michael J. Van Zandt
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: 415-995-5001
Fax: 415-995-3566
Email: mvanzandt@hansonbridgett.com

Marcia Raines, City Manager
CITY OF MILLBRAE
621 Magnolia Avenue
Millbrae, California 94030
Telephone: 650-259-2334
Fax: 650-259-2415
Email: mraines@ci.millbrae.ca.us

89. Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.

90. Millbrae also agrees to make available to Baykeeper any new or existing documents within Millbrae's custody or control that are reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within seven (7) days of written request by Baykeeper.

91. During the life of this Consent Decree, Millbrae shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

92. Any notice, report, certification, data presentation or other document submitted by Millbrae to Baykeeper pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXII.   GENERAL PROVISIONS

93. <u>Continuing Jurisdiction</u>.  The Settling Parties stipulate that the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date in paragraph 10.

94. <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in Section II above.

95. <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

96. <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

97. <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, scanned copies (i.e., pdf) and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

98. <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

99. <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

100.    <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

101.   <u>Authority</u>.  The undersigned representatives for Baykeeper and Millbrae each certify that he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

The Settling Parties hereby enter into this Consent Decree.

CITY OF MILLBRAE

Date: _____          _____

By: Marcia Raines, City Manager

SAN FRANCISCO BAYKEEPER

Date: _____          _____

By: Deb Self, Executive Director

APPROVED AS TO FORM:                For DEFENDANT CITY OF MILLBRAE:
                                    HANSON BRIDGETT LLP

Date: _____          _____

By: Michael J. Van Zandt

For SAN FRANSCISCO BAYKEEPER:
LAWYERS FOR CLEAN WATER INC.

Date: _____          _____

By: Daniel Cooper

**ORDER**

IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Baykeeper's claims against the City of Millbrae for the sole purpose of enforcing compliance by the Parties with the terms of the Consent Decree.

IT IS SO ORDERED.

Date: _11/15/10

_____
Honorable Saundra Brown Armstrong
United States District Court Judge
Northern District of California